IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MICHAEL L. WEINSTEIN, CASEY M.
WEINSTEIN, PATRICK T. KUCERA,
ARIEL B. KAYNE, JASON A. SPINDLER,

    Plaintiffs,

vs.                                                                        Civ. No. 05-1064 JP/LAM

UNITED STATES AIR FORCE and
MICHAEL WYNNE, Acting Secretary
of the Air Force,

    Defendants.

## MEMORANDUM OPINION AND ORDER

In their Amended Complaint for Violation of Constitutional Rights ("First Amended Complaint") (Doc. No. 4), Plaintiffs express sincere concerns and allege serious constitutional violations regarding "evangelical Christian" proselytizing at the United States Air Force Academy ("Academy"). This Memorandum Opinion and Order does not reach the question of whether the alleged constitutional violations actually occurred. Instead, it addresses whether Plaintiffs have stated a claim for relief against the United States Air Force ("USAF"); whether Plaintiffs have legal standing at this time, in this Court, to assert their claims against Defendant Michael Wynne as stated in their First Amended Complaint; and whether Plaintiffs should be allowed to amend their allegations, yet again, to add Phillip Burleigh ("Burleigh") as a plaintiff. These questions arise from Defendants' Motion to Dismiss (Doc. No. 21) and Plaintiffs' Motion to Amend First Amended Complaint (Doc. No. 34), rulings on which dispose of all pending motions.[1]

---

[1] The following motions are pending in this case:
1) Motion for the Admission of Kevin H. Theriot and Joel L. Oster Pro Hac Vice (Doc. No. 6), filed November 7, 2005;

A. Defendants' Motion to Dismiss

    1. Background

Plaintiff Michael L. Weinstein is an honor graduate of the United States Air Force Academy ("Academy") and "the parent of two active duty members of the United States Air Force ('USAF'), including one cadet currently at the Academy. Michael L. Weinstein is also the father and father-in-law of two recent Academy graduates, both of whom are currently on active duty with the USAF." First Amended Complaint at ¶2. Plaintiffs Casey Weinstein, Patrick Kucera, Ariel Kayne, and Jason Spindler are 2004 graduates of the Academy and currently are on active duty with the USAF. First Amended Complaint at ¶¶ 3, 4, 5, 6.

According to the First Amended Complaint, the USAF has violated the Establishment Clause of the First Amendment because "it is the unwritten policy of many evangelical chaplains to continue proselytizing and evangelizing cadets and staff" and "[b]y adopting a formal and informal policy of evangelizing, proselytizing and otherwise actively challenging the religions" of cadets at the Academy. First Amended Complaint at ¶23and ¶26.

---

    2) First Amended Motion to Intervene by Major James Glass and Captain Karl Palmberg on Behalf of Defendants (Doc. No. 10), filed November 8, 2005;
    3) Defendants' Unopposed Motion for an Extension of Time to Respond to Amended Complaint (Doc. No. 18), filed December 2, 2005;
    4) Defendants' Motion to Dismiss (Doc. No. 21), filed December 23, 2005;
    5) Motion to Intervene of the National Association of Evangelicals and its Chaplains Commission (Doc. No. 27), filed February 8, 2006;
    6) Plaintiffs' Motion to Amend First Amended Complaint (Doc. No. 34), filed March 9, 2006;
    7) Motion for Enlargement of Time in Which to File Reply in Support of Motion to Intervene of the National Association of Evangelicals and its Chaplains Commission (Doc. No. 35), filed March 24, 2006; and
    8) Defendants' Motion to Strike Plaintiffs' "Supplemental Response to Defendants' Motion to Dismiss" (Doc. No.40), filed August 21, 2006.

In paragraphs 12 through 23, under a section of their First Amended Complaint entitled "**Factual Allegations**," Plaintiffs allege general information about policies and practices at the Academy and various factual episodes that have occurred at the Academy. In summary, they are as follows:

¶ 12. The staff and faculty of the Academy molds future leaders to lead the world's greatest aerospace force in service to the nation.

¶ 13. Over the last decade at the Academy a pattern and practice has developed where senior officers and cadets have attempted to impose evangelical Christianity.

¶ 14. At a Basic Cadet Training session, attended by observers from Yale Divinity School, an Academy chaplain, Major Warren Watties, led a worship service and encouraged cadets in attendance to proselytize cadets who did not attend the service "with the declared penalty of not accepting this proselyzation being to 'burn in the fires of hell.'"

¶ 15. "Certain chaplains" encouraged cadets to "witness" to other cadets in an effort to convert them to evangelical Christianity.

¶ 16. Cadets have been coerced into non-secular prayers during mandatory and official events at the Academy.

¶ 17. Permanent Party members and upperclass cadet staff have encouraged or pressured classmates and underclass cadets to engage in evangelical Christian religious practices.

¶ 18. Continued violations of the Constitution by the Academy "are severe, systemic and pervasive, and have fostered discrimination and harassment toward non-evangelical Christian, non-Christian and non-religious cadets and Academy staff."

¶ 19. Within the Academy discrimination and harassment toward non-Christian and non-

religious cadets have been demonstrated "by numerous incidents of slurs directed at individual cadets who hold minority religion status or are Jewish or atheists." Christian cadets have been given "non-chargeable passes" to attend Christian religious services whereas cadets who celebrate the Sabbath on other days of the week have not been given non-chargeable passes.

¶ 20.  Despite claims that the USAF has changed its policies regarding evangelizing at the Academy, USAF officials have made it clear that they have no intent to actually remedy the unconstitutional practices.

¶ 21.  On July 12, 2005 Brigadier General Cecil R. Richardson, Deputy Chief of Chaplains of the USAF, said "We will not proselytize, but we reserve the right to evangelize the unchurched."

¶ 22.  Despite requests by Plaintiff Michael L. Weinstein to repudiate Brigadier General Richardson's statement, the Defendants have refused to do so and have thereby ratified "this policy."

¶ 23.  Plaintiffs believe "it is the unwritten policy of many evangelical chaplains to continue proselytizing and evangelizing cadets and staff at the United States Air Force Academy."

In two paragraphs under the category of "**Factual Allegations**" Plaintiffs seem to attempt to broaden their claims beyond the alleged policies and practices at the Academy. In ¶ 20, Plaintiffs state, "Despite claims by the USAF that it has changed its policies regarding evangelizing at the Academy and throughout the entire USAF, USAF officials have made it clear

that they have no intent to actually remedy the unconstitutional practices of the USAF." In ¶ 23, Plaintiffs say, "Upon information and belief, it is the unwritten policy of many evangelical chaplains to continue proselytizing and evangelizing cadets and staff at the United States Air Force Academy <u>and members of the United States Air Force at large</u>."  (Underlining added). These passing references that appear to try to extend Plaintiffs' claims beyond events at the Academy are unsupported by any factual allegations of specific occurrences in regard to which any of the Plaintiffs' constitutional rights have been violated.  Not a single Plaintiff has alleged any personal factual situation that has allegedly impinged on that Plaintiff's constitutional rights since the Plaintiff left the Academy.  No Plaintiff claims to have personally experienced any of the things described under "**Factual Allegations**," paragraphs 12 through 23, while at the Academy or after leaving the Academy.  Plaintiffs describe no specific incidents demonstrating support for the proposition that there is an "unwritten policy of many evangelical chaplains to continue proselytizing and evangelizing . . . members of the Air Force at large" as mentioned in ¶ 23.  The only fair reading of Plaintiffs' factual allegations limits them to practices and events at the Academy and policies as they affect persons, other than Plaintiffs, at the Academy.

The Plaintiffs bring this lawsuit under 42 U.S.C. §1983 and seek only injunctive relief.

2.  Discussion

As an initial matter, the Court must address the Defendants' Motion to Strike Plaintiffs' "Supplemental Response to Defendants' Motion to Dismiss" (Doc. No. 40) before proceeding to discuss Defendants' motion to dismiss.  Considering that Plaintiffs' supplemental response is

actually a surreply, the Court notes that the Plaintiffs filed the supplemental response without permission of the Court, thereby making it untimely and inappropriate. *See* D.N.M. LR-Cv 7.6(b)("The filing of a surreply requires leave of the Court."). Moreover, the supplemental response alleges violations of the Establishment Clause which occurred in July 2006. These allegations were not raised in the First Amended Complaint or mentioned in the proposed Second Amended Complaint. The Plaintiffs argue that the Court should consider the July 2006 allegations as evidence supporting their argument that Plaintiffs will suffer, in the future, violations of the Establishment Clause, and that injunctive relief is, therefore, warranted. Plaintiffs are, in effect, attempting to amend the First Amended Complaint and the unfiled Second Amended Complaint to include the allegations about July 2006 violations. The Court, however, will not consider allegations which do not appear in the First Amended Complaint or in the proposed Second Amended Complaint. *See, e.g., Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), *cert. denied*, 470 U.S.1054 (1985)(it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."). The Court will, therefore, grant the Defendants' motion to strike the supplemental response.

The Defendants argue first in their motion to dismiss that the Plaintiffs cannot bring this lawsuit under 42 U.S.C. §1983 because this case does not involve state action. That argument is correct. Nonetheless, the Court will construe Plaintiffs' constitutional claims against Defendant Wynne as *Bivens* claims. *See Dry v. United States*, 235 F.3d 1249, 1256 (10th Cir. 2000)(construing constitutional claims against federal defendants as *Bivens* claims although plaintiffs originally brought those claims under §1983). The Court, however, cannot construe Plaintiffs' constitutional claims against the USAF as *Bivens* claims, because federal agencies are

6

not subject to *Bivens*. *F.D.I.C. v. Meyers*, 510 U.S. 471, 484-86 (1995). Plaintiffs, therefore, have failed to state a legally cognizable claim against the USAF. *See* Fed. R. Civ. P. 12(b)(6). Hence, Plaintiffs' claims against the USAF will be dismissed with prejudice. *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003)(dismissing with prejudice claims against a federal agency which were brought under *Bivens*).

Next, the Defendants argue that the Plaintiffs have failed to satisfy the requirements of standing and ripeness and that the Court, therefore, lacks subject matter jurisdiction in this case. The Plaintiffs, however, argue that they in fact have standing and that their claims are ripe for judicial review. In the alternative, the Plaintiffs contend that 1) discovery should be completed before the Court rules on the standing and ripeness issues, and/or 2) Plaintiffs should be allowed to amend their complaint a second time.

      a. Plaintiffs' Request for Discovery

Before addressing the standing and ripeness issues, the Court will address Plaintiffs' request in the alternative to conduct discovery. In *Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1326 (10th Cir. 2002), the Tenth Circuit stated that

> [w]hen a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion. Although a district court has discretion in the manner by which it resolves an issue of subject matter jurisdiction under Rule 12(b)(1), a refusal to grant discovery constitutes an abuse of discretion if the denial results in prejudice to a litigant. Prejudice is present where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.

(Citations and quotation marks omitted). Plaintiffs do not explain in any specific terms why discovery is warranted or what particular discovery is sought; Plaintiffs merely make a general

blanket request to conduct discovery.² Accordingly, Plaintiffs have failed to demonstrate how they would be prejudiced if the Court denies their request to conduct discovery. Under these circumstances, Plaintiffs' request to conduct discovery will be denied.

  b. Standing

There are two types of standing: Article III "case or controversy" standing and prudential standing. Although Defendants argue that Plaintiffs lack both Article III standing and prudential standing, the Plaintiffs only address Article III standing in their response. Plaintiffs have conceded Defendants' argument as to prudential standing by failing to file a response in opposition to Defendants' argument on that issue. *See* D.N.M. LR-Cv 7.1(b). Consequently, the Court will focus on Article III standing.

"To satisfy the requirements for [Article III] standing for injunctive relief, [a] plaintiff must demonstrate: 1) that he will suffer an injury in fact which is both concrete and particularized and actual or imminent, not conjectural or hypothetical; 2) that the conduct complained of will cause the injury alleged; and, 3) that it is likely, not speculative, that the injury will be prevented by a favorable decision." *Schmidt v. Cline*, 127 F.Supp.2d 1169, 1172 (D. Kan. 2000)(citing *Bear Lodge Multiple Use Ass'n v. Babbitt*, 175 F.3d 814, 821 (10th Cir. 1999), *cert. denied*, 529 U.S. 1037 (2000)). When a non-economic injury is alleged, the first element of the Article III standing test can be fulfilled if the plaintiff alleges "'**personal contact** with the offensive action....'" *Id*. at 1173 (emphasis added)(quoting *Foremaster v. City of St. George*, 882 F.2d 1485, 1490 (10th Cir. 1989), *cert. denied*, 495 U.S. 910 (1990)). Moreover, in an injunctive

---

²The Court notes that Plaintiffs did not file a separate motion for discovery; their general request for discovery appears in Plaintiffs' Response to Defendants' Motion to Dismiss.

relief context, the plaintiff must show that there is "a real and immediate threat" of future harm to the plaintiff as a result of the allegedly illegal conduct. *Id*. at 1174.

Plaintiffs do not allege in the First Amended Complaint that there is "a real and immediate threat" that they will have "personal contact" with the alleged Establishment Clause violations that have occurred or are occurring presently at the Academy.  Although Plaintiffs allege that various actions occurred to "cadets" at the Academy, Plaintiffs do not name those "cadets;" Plaintiff only generally allege when these actions occurred ("[o]ver the course of at least the last decade"); and except for Major Warren Watties, Plaintiffs do not name the offending people. With respect to the allegation that Brigadier General Richardson made an inappropriate statement in an interview published in The New York Times on July 12, 2005,  the Plaintiffs do not specify or explain how this statement personally affected, or would in the future personally affect, them. In other words, Plaintiffs never allege a personal link or connection to any alleged future Establishment Clause violations.  Without that personal link or connection to future misconduct, Plaintiffs have simply not shown that they will suffer an injury in fact that is  "both concrete and particularized and actual or imminent."  In addition, the Plaintiffs, as former Academy students, have failed to satisfy the causation element of Article III standing by virtue of their having graduated from the Academy prior to the filing of this lawsuit. *See Roberts v. Madigan*, 921 F.2d 1047, 1052 (10th Cir. 1990), *cert. denied*, 505 U.S. 1218 (1992)(in context of request for injunctive relief, student who graduated from class prior to filing of lawsuit did not meet causation requirement necessary to establish Article III standing). Consequently, the Plaintiffs have not demonstrated that they have Article III standing to bring the First Amended Complaint.  Having failed to establish Article III standing, there is no reason for the Court to address the ripeness

issue. In sum, Plaintiffs' First Amended Complaint should be dismissed without prejudice for lack of subject matter jurisdiction.

B.  Plaintiffs' Motion to Amend the First Amended Complaint

    1.  The Proposed Second Amended Complaint

The Plaintiffs attempt to correct any standing and ripeness issues by moving to amend the First Amended Complaint. Although the proposed Second Amended Complaint retains the same Plaintiffs as the First Amended Complaint and the same factual allegations with respect to the Academy, the proposed Second Amended Complaint adds Phillip T. Burleigh as a plaintiff. Burleigh, a USAF Master Sergeant and recruiter residing in Alamogordo, New Mexico, alleges that in 1997 he "was subjected to aggressive proselytizing by his direct supervisor" including discrimination for not attending prayer meetings and that his supervisor used "government resources to evangelize new recruits." Proposed Second Amended Complaint at ¶¶25 and 26. Burleigh also alleges that in 2003 and in 2005 he was required to attend recruiter conventions at which the hired guest speakers violated the Establishment Clause of the First Amendment. The proposed Second Amended Complaint further alleges that on February 9, 2006, the Defendants formulated unconstitutional Revised Interim Guidelines in response to complaints that the USAF violated the Establishment Clause of the First Amendment.

Plaintiffs base the proposed Second Amended Complaint on §1983 and allege violations of the Establishment Clause of the First Amendment. Plaintiffs seek injunctive relief with respect to the alleged violations of the Establishment Clause and seek a declaratory judgment that certain provisions of the Revised Interim Guidelines are unconstitutional.

    2.  Discussion

Plaintiffs bring their motion to amend under Fed. R. Civ. P. 15(a). Rule 15(a) provides that a party may amend its pleadings only by leave of the court or by written consent of the adverse party, and that leave will be freely given when justice requires. Leave to amend should be granted unless the party opposing the motion has a made a showing of undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, futility of amendment, or undue prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A proposed amendment to a complaint is futile if it would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment or a motion to dismiss. *See, e.g., Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). The grant or denial of a motion to amend is within the sound discretion of the trial court. *Foman*, 371 U.S. at 182.

Defendants argue that the proposed Second Amended Complaint is subject to dismissal and so, Plaintiffs' motion to amend should be denied as futile. Once more, the Defendants correctly note that the proposed Second Amended Complaint is improperly brought under §1983. The Court, however, construes the proposed Second Amended Complaint as a *Bivens* action against Defendant Wynne but finds that it would be futile to bring a *Bivens* action against the USAF. *See supra*, p. 6-7.

The Defendants also argue that the proposed Second Amended Complaint still fails to properly allege that the original Plaintiffs have standing and that their claims are ripe for adjudication. That portion of the proposed Second Amended Complaint which is reasonably attributed to the original Plaintiffs is essentially identical to the First Amended Complaint. Applying the analysis already used with respect to the Defendants' motion to dismiss, the Court

11

concludes that the original Plaintiffs continue to lack Article III standing with respect to the proposed Second Amended Complaint.  Accordingly, it would be futile to amend the First Amended Complaint to once again include the original Plaintiffs and their claims regarding unconstitutional activity at the Academy.

Defendants further raise the issue of Article III standing with respect to Burleigh.  One could liberally construe the proposed Second Amended Complaint to allege that Defendants violated Burleigh's rights under the Establishment Clause in 1997, 2003, and 2005.  These alleged past violations, however, are not enough to show Article III standing in an injunctive relief context.  Burleigh attempts to argue to the contrary by noting that there appears to have been a pattern in hiring religious motivational speakers for mandatory recruiter conferences.  He thinks this is evidenced by the participation of religious motivational speakers in the 2003 and 2005 conferences.[3]  Burleigh, therefore, believes that it is probable that the 2007 motivational speaker will likewise present a religious theme.  The Court finds that, at this point, Burleigh's belief is simply conjectural and hypothetical in nature.  Without "a real and immediate" threat of future harm, Burleigh has failed to show that he has Article III standing to bring a lawsuit seeking only injunctive relief for alleged First Amendment violations.  Without Article III standing, it would be futile for Burleigh to bring his First Amendment claims in the proposed Second Amended Complaint.

In addition, the Defendants argue that Burleigh's allegation of First Amendment violations occurring in 1997 are subject to a six year statute of limitations.  *See* 28 U.S.C. §2401(a)("Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the

---

[3]These recruiter conferences occur every other year.

United States shall be barred unless the complaint is filed within six years after the right of action first accrues."). Burleigh does not dispute that more than six years have passed since the alleged 1997 misconduct occurred, nor does Burleigh argue that the statute of limitations should have been tolled. Burleigh's allegations regarding the 1997 misconduct would, therefore, also be subject to dismissal as barred by the statute of limitations. For this additional reason, it would be futile for Burleigh to bring the 1997 claim of misconduct.

Defendants also assert that Burleigh's claims are subject to dismissal because (1) some of them simply did not occur; and (2) Burleigh failed to exhaust administrative remedies prior to attempting to bring his lawsuit. Burleigh, however, presents sufficient evidence in his reply brief to support factually the occurrences which he alleges. With respect to the failure to exhaust administrative remedies argument, the Tenth Circuit has held that although a plaintiff must exhaust administrative remedies in order to invoke federal jurisdiction, the exhaustion of administrative remedies requirement is not necessary to invoke federal jurisdiction if "the administrative remedy is wholly inadequate and the federal question is so plain that exhaustion is excused." *Martinez v. Richardson*, 472 F.2d 1121, 1125 (10th Cir. 1973). Burleigh does not argue that the USAF administrative remedies were "wholly inadequate" to address his alleged First Amendment violations. Consequently, under the *Martinez v. Richardson* standard Burleigh has failed to exhaust his administrative remedies. This is another reason for finding that it would be futile for Burleigh to bring his claims as stated in the proposed Second Amended Complaint.

Next, Defendants argue that Plaintiffs' request for a declaratory judgment, presented for the first time in the proposed Second Amended Complaint, is subject to dismissal because 1) the Revised Interim Guidelines appear constitutional on their face; 2) the declaratory judgment action

13

is not ripe; and 3) Plaintiffs should have pursued the declaratory judgment action in the original complaint or in the First Amended Complaint.  The Plaintiffs argue successfully that even if the Revised Interim Guidelines may appear constitutional on their face, as Defendants contend, Plaintiffs nonetheless allege in the proposed Second Amended Complaint that the Revised Interim Guidelines are also "applied" in an unconstitutional manner, a separate and distinct claim from the claim that the Revised Interim Guidelines are unconstitutional on their face.  Moreover, Plaintiffs successfully refute Defendants' ripeness argument which focuses on the interim nature of the Revised Interim Guidelines by noting that although "interim" the Revised Interim Guidelines are currently in effect and controlling at this time.

      Plaintiffs, however, do not fare so well with respect to Defendants' argument that Plaintiffs' request for a declaratory judgment should have been raised sooner.   "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)(citation omitted).  Moreover, "[u]ntimeliness alone may be a sufficient basis for denial of leave to amend." *Id*.  Plaintiffs do not explain why they did not seek a declaratory judgment in the original complaint or even in their First Amended Complaint, which was filed <u>after</u> Plaintiffs had been notified of the Revised Interim Guidelines.[4]  Plaintiffs' unexplained delay in attempting to bring the declaratory judgment action is sufficient reason to deny Plaintiffs'

---

      [4]In a letter dated October 5, 2005, Mary Walker, General Counsel of the Department of the Air Force, informed Plaintiffs' counsel, Sam Bregman, of the Revised Interim Guidelines and mentioned that Plaintiff Michael Weinstein had responded to the Revised Interim Guidelines as of September 26, 2005.  Attached to Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss (Doc. No.22), filed Dec. 23, 2005.

request to amend the First Amended Complaint to include that action in a second amended complaint.

C.  Conclusion

Having found that the Defendants' motion to dismiss should be granted and Plaintiffs' motion to amend should be denied, the Court will dismiss this lawsuit with prejudice as to Defendant United States Air Force and will dismiss this lawsuit without prejudice as to Defendant Michael Wynne.[5]  Since Plaintiffs' lawsuit will be dismissed, the other pending motions should be denied as moot.

IT IS ORDERED that:

1.  Defendants' Motion to Strike Plaintiffs' "Supplemental Response to Defendants' Motion to Dismiss" (Doc. No.40) is granted;

2.  Plaintiffs' supplemental Response to Defendants' Motion to Dismiss (Doc. No. 39) is

---

[5]Because Plaintiffs' claims against Defendant Michael Wynne will be dismissed **without** prejudice, Plaintiffs will have an opportunity to file another lawsuit in an attempt to state a valid claim against him upon which relief can be granted, if they can do so in compliance with FED. R. CIV. P. 11.  In deciding where to file a new lawsuit, Plaintiffs should give careful consideration to 28 U.S.C. § 1404(a) and the cases that have interpreted that statute.  Section 1404(a) states: "For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Although, technically, venue may lie in the District of New Mexico, it may not be the most convenient forum in which to resolve Plaintiffs' claims.  Only Plaintiffs Michael and Casey Weinstein are residents of New Mexico; the other three Plaintiffs and the Defendant reside in other states.  None of the actions of which Plaintiffs complain took place in New Mexico.  None of the offending actors appear to have any connection, whatsoever, with New Mexico.  Because the specific incidents of alleged misconduct all occurred at the Academy, it would seem that almost all of the witnesses would be from Colorado where the Academy is located.  As to the policies which the Plaintiffs find to be offensive, most likely they were developed in the nation's capitol, Washington, D.C., or at the Pentagon in Virginia; there is no indication that anyone in New Mexico had anything to do with the promulgation of these policies.  None of the sources of proof of the allegedly unconstitutional events or policies likely will be found in New Mexico.

stricken from the record in this case;

    3. Plaintiffs' request for discovery is denied;

    4. Defendants' Motion to Dismiss (Doc. No. 21) is granted;

    5. Plaintiffs' claims will be dismissed with prejudice as to the USAF;

    6. Plaintiffs' claims will be dismissed without prejudice as to Defendant Michael Wynne;

    7. Plaintiffs' Motion to Amend First Amended Complaint (Doc. No. 34) is denied; and

    8. the following motions are denied as moot:

        a. Motion for the Admission of Kevin H. Theriot and Joel L. Oster Pro Hac Vice (Doc. No. 6);

        b. First Amended Motion to Intervene by Major James Glass and Captain Karl Palmberg on Behalf of Defendants (Doc. No. 10);

        c. Defendants' Unopposed Motion for an Extension of Time to Respond to Amended Complaint (Doc. No. 18);

        d. Motion to Intervene of the National Association of Evangelicals and its Chaplains Commission (Doc. No. 27); and

        e. Motion for Enlargement of Time in Which to File Reply in Support of Motion to Intervene of the National Association of Evangelicals and its Chaplains Commission (Doc. No. 35).

_____
SENIOR UNITED STATES DISTRICT JUDGE